IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **REBECCA GREEN,** *Individually and on behalf of herself and others similarly situated employees*, | )<br>)<br>) |
| **Plaintiff,** | )  **FLSA Collective Action**<br>)  **JURY DEMANDED** |
| v. | )<br>)  **Case No. 3:20-cv-00439** |
| **MISSION HEALTH COMMUNITIES, LLC,** *a Florida Limited Liability Company*, **and DICKSON OPERATOR, LLC,** *a Florida Limited Liability Company*, | )<br>)<br>)<br>)<br>) |
| **Defendants.** | ) |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION, or alternatively TO DISMISS FOR FAILURE TO STATE A CLAIM**

Plaintiff Rebecca Green contractually agreed to arbitrate any claim arising out of her employment with Defendants Mission Health Communities, LLC ("Mission Health"), Dickson Operator, LLC ("Dickson") (collectively "Defendants"), and non-party Engage PEO ("Engage"). Instead of seeking to arbitrate her claim for allegedly unpaid wages under the Fair Labor Standards Act (the "FLSA"), Plaintiff filed suit against Defendants in this Court. Accordingly, the Court should grant Defendants' Motion to Compel and dismiss the Complaint. In the alternative, because Plaintiff's sole claim is insufficiently pled and directly contradicted by documents of which this Court may take judicial notice, the Court should dismiss the Complaint for failure to state a claim.

I. **SUMMARY OF RELEVANT FACTS**

Plaintiff was a co-employee of Mission Health and Engage working as a Certified Nursing Assistant ("CNA") at the Dickson Health and Rehabilitation Center in Dickson, Tennessee (the "Facility"). *See* Compl. at ¶ 9; *see also* Greger Decl. at ¶¶ 3, 6 and Ex. A. Plaintiff was a non-

4818-5585-1465.1

Case 3:20-cv-00439   Document 13   Filed 09/04/20   Page 1 of 12 PageID #: 44

exempt hourly employee receiving a base compensation of $13.00 per hour. *See id.* at ¶ 8. She was employed in this capacity from September 11, 2018 until her voluntary resignation on September 10, 2019, and from her return on October 16, 2019 until her termination on February 24, 2020 for violating Mission Health's Code of Conduct. *See id.* at ¶ 3.

As a condition of her employment, Plaintiff reviewed and signed two separate copies of an arbitration agreement with Mission Health and Engage (the "Arbitration Agreement") on each of her first days of work. *See id.* at ¶¶ 4–6 and Ex. A. Pursuant to the Arbitration Agreement, Plaintiff agreed to "settle any and all previously unasserted claims, disputes, or controversies arising out of or relating to [her] . . . employment and/or separation from employment **exclusively by final and binding arbitration** with a neutral Arbitrator," specifically including "claims under . . . wage and hour laws." *See id.* at ¶ 6 and Ex. A.

During both of her first day orientations, Plaintiff was also instructed on the proper use of time clocks to record her time spent working. *See id.* at ¶¶ 8–9 and Ex. B. As part of this instruction, Plaintiff reviewed and signed a document entitled "Webclock," which directed employees to check their time sheets daily and to fill out a miss punch form for any necessary corrections and explicitly advised Plaintiff that "it [was her] responsibility to make sure [her] time [was] recorded correctly." *See id.* at ¶ 9 and Ex. B. Defendants further instructed Plaintiff to take a 30-minute unpaid meal break when scheduled to work any shift of six consecutive hours or more and to clock in and out for this break. *See id.* at ¶ 8. Plaintiff generally disregarded these instructions, and she rarely clocked in and out for her meal breaks. *See id.* at ¶¶ 8, 10 and Ex. C. Despite her failure to clock out for meal breaks, at no point during Plaintiff's employment with Defendants was a policy or practices implemented that automatically deducted 30 minutes from an employee's recorded time when calculating compensation. *See id.* at ¶¶ 8–10 and Ex. C.

Plaintiff was paid for all the time during which she was clocked in, including when she was supposed to be on a meal break. *See id.* at ¶¶ 8, 10 and Exs. C and D.

Despite the signed Arbitration Agreement and non-existence of an automatic deduction for meal breaks, Plaintiffs filed the present lawsuit in this Court on May 22, 2020, alleging violations of the FLSA on behalf of herself and a putative class of CNAs who she claims were not paid wages for time spent working during meal breaks because of a practice that automatically deducted 30 minutes for the meal period regardless of whether CNAs worked during that time. Compl. at ¶¶ 1, 20–30, 34, 56. Such a practice simply does not exist. *See* Greger Decl. at ¶¶ 8–10 and Exs. C and D.

## II. **ARGUMENT**

### A. Plaintiff Should be Compelled to Arbitrate

#### 1. *Federal law favors enforcement of arbitration agreements.*

The Federal Arbitration Act ("FAA") provides that agreements to mediate and arbitrate, like that signed by Plaintiff, are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. No such grounds here exist. The FAA applies broadly to any dispute "involving commerce," whether in state or federal court. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). In enacting Section 2 of the FAA, Congress declared a national policy favoring arbitration and required all courts rigorously enforce such agreements. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991). Recognizing this legislative mandate, the United States Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Broaddus v. Rivergate Acquisitions, Inc.*, at *3 (M.D. Tenn. Oct. 1, 2008) ("There is a strong presumption in favor of arbitration, and

any doubts regarding arbitrability must be resolved in favor of arbitration."). The United States Supreme Court has described the FAA provisions "as reflecting both a 'liberal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (citations omitted). "Courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id.* (citations omitted).

The Supreme Court has emphasized that disputes in the employment context are no different than any other under the FAA: agreements to arbitrate employment-related claims are broadly enforceable. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119–20 (2001). The Sixth Circuit has also specifically found that arbitration agreements are enforceable with respect to FLSA collective actions, even when the arbitration agreement itself does not explicitly mention class or collective actions. *See Huffman v. Hilltop Cos.*, 747 F.3d 391, 398–99 (6th Cir. 2014); *see also Smiley v. Am. Family Care, Inc.*, 2019 U.S. Dist. LEXIS 120011, *5 (M.D. Tenn. July 18, 2019) ("Plaintiff cannot avoid an otherwise applicable requirement simply because the Agreement does not expressly mention class or collective actions.").

2. *The parties entered into a valid and enforceable arbitration agreement.*

In deciding whether to compel arbitration, courts address two "gateway" issues: (1) whether there was an agreement to arbitrate that is enforceable between the parties and (2) whether the agreement covers the dispute. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *see also Walker v. Ryan's Steak Houses, Inc.*, 289 F. Supp. 2d 916, 922 (M.D. Tenn. 2003). In this case, the answer to both inquiries is yes.

First, an agreement to arbitrate "any and all previously unasserted claims, disputes, or controversies arising out of or relating to [Plaintiff's] . . . employment," specifically including

"claims under . . . wage and hour laws" explicitly covers Plaintiff's wage and hour claims brought against her former employers in this case. *See* Greger Decl. at ¶ 6 and Ex. A. Accordingly, the Court should hold that Plaintiff's claims are encompassed by the Arbitration Agreement.

Second, there can be no reasonable dispute that the Arbitration Agreement is a valid and enforceable contract, and as evidenced by its plain language and execution by Plaintiff, the Arbitration Agreement meets the essential elements of an enforceable contract under Tennessee law. *See id.* at ¶ 6 and Ex. A.

State contract law principles govern whether the parties have a contractually valid agreement to arbitrate in any given case. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The requisites for forming a valid contract in Tennessee are well settled: contracts require (1) an offer, *Mason v. Pearson*, 668 S.W.2d 656, 660 (Tenn. Ct. App. 1983), (2) an effective acceptance of the offer, *Pinney v. Tarpley*, 686 S.W.2d 574, 580 (Tenn. Ct. App. 1984), and (3) consideration. *Campbell v. Matlock*, 749 S.W.2d 748, 752 (Tenn. Ct. App. 1987). Here, Mission Health and Engage offered Plaintiff employment conditioned on her acceptance of the Arbitration Agreement, she accepted by signing the agreement and continuing her employment, and her employment with Mission Health and Engage constituted sufficient consideration for the agreement. *See Whitehead v. Comcast Corp.*, 2015 U.S. Dist. LEXIS 175550, at *7 (W.D. Tenn. Dec. 14, 2015) ("Pursuant to Whitehead's acceptance of the offer letter, Comcast hired Whitehead. Whitehead's continued employment . . . constitutes sufficient consideration."); *Smith v. Cheesecake Factory Rests., Inc.*, 2010 U.S. Dist. LEXIS 9818, *30 (M.D. Tenn. Feb. 3, 2010) (enforcing arbitration agreement where "Plaintiffs, as employees of CFRI, signed the agreement with the arbitration provision as a condition of their employment."). Indeed, similar Tennessee agreements to arbitrate between an employee and an employer as a condition of employment have

been routinely enforced in the Sixth Circuit. *See, e.g.*, *Howell v. Rivergate Toyota, Inc.*, 144 Fed. Appx. 475, 481 (6th Cir. 2005) (affirming district court's dismissal of the plaintiff's claims because he had signed a mandatory arbitration agreement); *Doss v. Nordstrom, Inc.*, 2016 U.S. Dist. LEXIS 129813, *21 (M.D. Tenn. Sep. 22, 2016); *Parker v. Rich Products Corp.*, 2014 U.S. Dist. LEXIS 76215, *3 (M.D. Tenn. May 30, 2014); *Lewis v. Labor Ready Mid-Atl., Inc.*, 2009 U.S. Dist. LEXIS 15081, *15 (M.D. Tenn. Feb. 26, 2009); *Hardin v. Morningside of Jackson, L.L.C.*, 425 F. Supp. 2d 898, 908 (W.D. Tenn. 2006); *Allen v. Tenet Healthcare Corp.*, 370 F. Supp. 2d 682, 686 (M.D. Tenn. 2005). The Arbitration Agreement should be enforced as well.

### 3. *Defendants may enforce the Arbitration Agreement.*

Defendants anticipate that Plaintiff will assert that even if the Arbitration Agreement is otherwise enforceable, it was only entered into between Plaintiff and non-party Engage, and therefore, Defendants cannot compel her to arbitrate her claims. This argument is wrong for two reasons: (1) Mission Health is a party to the Arbitration Agreement and (2) even if Mission Health is not a party to the Arbitration Agreement, it can nevertheless enforce the agreement under either an estoppel or third-party beneficiary theory.

Mission Health is a party to the Arbitration Agreement. Mission Health presented the Arbitration Agreement to Plaintiff and informed her that her employment with it was contingent upon her agreement. *See* Greger Decl. at ¶¶ 4–6 and Ex. A. Plaintiff then accepted the Arbitration Agreement by signing it and beginning employment, and her co-employment with Mission Health and Engage constituted sufficient consideration for the agreement. *See id.* at ¶¶ 4–6 and Ex. A. Therefore, because an offer, acceptance, and consideration were exchanged between Mission Health and Plaintiff concerning the Arbitration Agreement, Mission Health was, by definition, a party to the Arbitration Agreement.

Additionally, the terms of the Arbitration Agreement itself show that Mission Health was a party to it. The Arbitration Agreement—the 2018 version of which includes Mission Health's logo at the top—makes repeated references to Plaintiff's employment with Mission Health, states that it is the "sole and entire understanding between [Plaintiff] and Mission Health and [Plaintiff] and Engage," that in signing her name, Plaintiff "agree[s] to abide by the foregoing regarding [her] employment with Mission Health and Engage," and explains that it "shall serve as an addendum to the Employee Handbook" Plaintiff received from Mission Health. *See id.* at ¶ 6 and Ex. A. Accordingly, consideration of both the elements of a contract and the specific contract at issue here, show that Mission Health was a party to the Arbitration Agreement.

Even if Mission Health were not a party to the Arbitration Agreement, it could nevertheless enforce the agreement and compel Plaintiff to arbitrate as a third-party beneficiary to the agreement or through equitable estoppel. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (A non-party to an arbitration agreement may enforce it through the "traditional principles" of state law that allow a contract to be enforced by nonparties including "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel."). Under an estoppel theory, non-signatory defendants may compel a signatory plaintiff to arbitration "where the merits of an issue between the parties was bound up with a contract binding one party and containing an arbitration clause." *Mid-South Maint., Inc. v. Paychex Inc.*, 2015 Tenn. App. LEXIS 655, *64–65 (Ct. App. Aug. 14, 2015) (quoting *JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163, 177–78 (2d Cir. 2004)). Similarly, "a third party is an intended third-party beneficiary of a contract, and thus entitled to enforce the terms of a contract, where (1) the parties to the contract have not otherwise agreed, (2) recognition of the third-party's right to performance is appropriate to effectuate the parties' intent, and (3) terms or circumstances indicate

that performance of the promise is intended or will satisfy an obligation owed by the promisee to the third party." *Benton v. Vanderbilt Univ.*, 137 S.W.3d 614, 618 (Tenn. 2004).

The Arbitration Agreement, which compels arbitration of all claims "relating to [Plaintiff's] employment" is replete with language expressing the interrelatedness of Plaintiff's "co-employ[ment]" with both Mission Health and Engage, including that "continued employment with Mission Health is an essential requirement for employment with Engage" and that in signing her name, Plaintiff "agree[s] to abide by the foregoing regarding [her] employment with Mission Health and Engage." *See* Greger Decl. at ¶ 6 and Ex. A. The Arbitration Agreement also explains that Engage is the entity that is to pay "all of [Plaintiff's] compensation for work done for Mission Health." *See id.* at ¶ 6 and Ex. A. Therefore, an agreement to compel Plaintiff to arbitrate claims arising from her employment under "wage and hour laws," necessarily involves both Mission Health and Engage and expresses an intent to compel Plaintiff to arbitrate any FLSA claims she may bring relating to her co-employment with Mission Health or Engage, even if she does not include Engage as a defendant. *Cf. Arnold v. Arnold Corp.-Printed Communications for Business*, 920 F.2d 1269, 1281–82 (6th Cir. 1990) ("We agree with the district court that if appellant can avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as [defendants] in his complaint, or signatory parties in their individual capacities only, the effect of the rule requiring arbitration would, in effect, be nullified.") (citation and quotations omitted). In contrast, the Arbitration Agreement contains no language indicating that Mission Health is not intended to be a beneficiary of the agreement or that the agreement would not cover claims brought against Mission Health. Accordingly, even if the Court finds that Mission Health was not a party to the Arbitration Agreement, it should nevertheless enforce the agreement under either an estoppel or third-party beneficiary theory.

### B. Plaintiff's Complaint Fails to State a Claim for which Relief can be Granted

Alternatively, if the Court decides that the Arbitration Agreement is not valid and enforceable, then it should dismiss the Complaint for failure to state a claim upon which relief can be granted. Plaintiff's Complaint is full of vague conclusory allegations and is largely devoid of any specific facts supporting her claim. Compl. Indeed, it does not contain allegations regarding Plaintiff's employment dates or wage rate, how much unpaid work she claims to have performed, when such work was supposedly performed, or even what type of unpaid work she performed. *Id.* The vagueness and lack of factual allegations in these conclusory allegations alone justify dismissal of any FLSA claim other than one arising from her allegations of an automatic deduction policy for meal breaks. *See Adams v. Diversicare Leasing Corp.*, 2015 U.S. Dist. LEXIS 89732, *14–15 (W.D. Tenn. July 10, 2015) (finding that "[w]hile close," allegations that "Defendants implemented a companywide break deduction policy that automatically deducted thirty minutes per shift, and a policy that required Plaintiffs to perform work off-the-clock" and that Plaintiffs "were required to work through their meal breaks and off-the-clock, which caused them to work in excess of forty hours per week" were " sufficient to give rise to a 'plausible suggestion' of a claim under the FLSA").

Indeed, the sole factual detail of Plaintiff's lone FLSA claim is that her uncompensated work resulted from Defendants automatically deducting 30 minutes from her clock time for meal breaks even when she was obligated to continue working during her meal break. Compl. at ¶¶ 1, 20–30, 34, 56. Despite being the entire basis of her claim, however, there is no reasonable dispute that—even though Plaintiff was instructed to manually clocked in and out for her meal breaks and consistently violated those instructions—Plaintiff was in fact paid for her entire clock time down to the one hundredth of an hour and that Defendants never deducted 30 minutes from Plaintiff's

clock time when calculating her compensation. *See* Greger Decl. at ¶¶ 8–10 and Exs. C and D; *see also id.* at Ex. B.[1] For example, Plaintiff's time clock and payroll records for the period from January 1 to 15, 2020 show that she was both clocked in and compensated for 72.29 hours of work time despite never clocking out for a lunch break. *See id.* at ¶ 10 and Exs. C and D. Similarly, in the period from January 16 to 31, 2020, Plaintiff was both clocked in and compensated for 107.01 work hours, and in the period from February 1 to 15, 2020 Plaintiff was clocked in and compensated for 62.14 work hours, and she never clocked out for lunch in any of those periods. *See id.* Likewise, in the period from December 1 to 15, 2018, Plaintiff clocked out on some days and did not clock out on others, and was still compensated for the full 71.21 hours when she was clocked in. *See id.* Indeed, every pay period shows the same consistency between Plaintiff's recorded time and her compensation—never was 30 minutes deducted from Plaintiff's clock time for meal breaks. *See, e.g.*, *id.* (October 1 to 15, 2018: 92.71 hours; March 16 to 31, 2019: 84.27 hours; May 1 to 15, 2019: 72.19; September 1 to 15, 2019: 24.03 hours). Therefore, Plaintiff's time clock and payroll records affirmatively show that no automatic deduction policy exists or was ever applied to Plaintiff. Accordingly, because the only claim Plaintiff has pled in her Complaint is conclusively refuted by Plaintiff's own pay and time clock records, the Complaint should be dismissed with prejudice.

---

[1] "In addition to the allegations in the complaint, the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for taking judicial notice" when ruling on a Rule 12(b)(6) motion. *Wyser-Pratte Management Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005). "If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings." *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001). Because Plaintiff's allegations specifically reference the Defendants' payroll and time clock policies, particularly Plaintiff's own payroll and time clock records, this Court may consider Defendants' payroll and time clock policy documents as well as Plaintiff's payroll and time clock records in ruling on a Rule 12(b)(6) motion. *See* Compl. at ¶¶ 12–13, 19–27, 34, 38, 42–43, 56; *see also id.* at ¶ 49 ("Plaintiff and class members' unpaid overtime compensation claims may be determined partially by an examination of Defendants' payroll, scheduling, time keeping, personnel and other such work-related records and documents.").

### C. The Court Should Dismiss the Complaint

Once an arbitration clause is deemed enforceable, it is generally proper under 9 U.S.C. § 3 to issue a stay of all further proceedings until arbitration is complete. *See, e.g.*, *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). However, when all of the plaintiffs' claims in a suit will be referred to arbitration, the Sixth Circuit has held that the case may be dismissed rather than stayed. *Ozormoor v. T–Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) (affirming the district court's order compelling arbitration and dismissing the complaint when all claims were referred to arbitration); *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) (noting that the "[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration"). Numerous district courts in this circuit have dismissed actions where all claims are subject to arbitration. S*ee, e.g.*, *Doe v. Déjà Vu Consulting Inc.*, 2017 U.S. Dist. LEXIS 142019, *57 (M.D. Tenn. Sep. 1, 2017); *Braxton v. O'Charley's Rest. Props., LLC*, 1 F. Supp. 3d 722, 728–29 (W.D. Ky. 2014) (collecting cases). Accordingly, because all of the Plaintiff's claims in this case are either subject to arbitration or have been insufficiently pled and should be dismissed on the merits, regardless of whether the Court compels arbitration, dismissal is appropriate. If Plaintiff's claims are not dismissed but arbitration compelled, Defendants ask in the alternative that the Court stay this acting pending resolution of the arbitration proceedings.

### III.    CONCLUSION

For these reasons, Defendants submit that the Court should compel Plaintiff to honor the terms of the Arbitration Agreement and arbitrate all claims. In the alternative, the Court should dismiss this action for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

/s/ *Andrew S. Naylor*
Andrew S. Naylor (BPR #017128)
Frederick L. Conrad III (BPR #032043)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219-8966
Telephone: (615) 244-6380
Fascimile: (615) 244-6804
andy.naylor@wallerlaw.com
trip.conrad@wallerlaw.com

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2020, the foregoing Memorandum in Support of Motion to Compel or Motion to Dismiss was filed and served via the Court's E-Filing Portal to the following:

Gordon E. Jackson (TN BPR #8323)
J. Russ Bryant (TN BPR #33830)
Robert E. Turner, IV (TN BPR #35364)
Robert E. Morelli, III (TN BPR #37004)
JACKSON, SHIELDS, YEISER, HOLT, OWEN & BRYANT
Attorneys at Law
262 German Oak Drive
Memphis, Tennessee 38018
Telephone: (901) 754-8001
Facsimile: (901) 754-8524
gjackson@jsyc.com
rbryant@jsyc.com
rturner@jsyc.com
rmorelli@jsyc.com

*Attorneys for Plaintiff*

/s/ *Andrew S. Naylor*